DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court on appeal from the Erie County Court of Common Pleas wherein appellant, Dionta Jesse Young, was found guilty by a jury of various drug offenses and tampering with evidence. For the reasons that follow, we affirm the judgment of the trial court in part and reverse in part.
 {¶ 2} On September 18, 2002, the Erie County Court of Common Pleas filed a ten count indictment against appellant (case No. 2002-CR-429). Counts 1 and 2 charged appellant with trafficking in cocaine and preparation of cocaine for sale on or about March 18, 2002. Counts 3, 4, 5 and 6 charged appellant with trafficking in cocaine and preparation of cocaine for sale on or about April 3, 2002. Counts 7, 8, 9 and 10 alleged that on or about July 30, 2002, appellant aided and abetted another in the offense of crack cocaine possession, appellant corrupted another with drugs, appellant tampered with evidence and, appellant was in possession of criminal tools. On November 15, 2002, the Erie County Court of Common Pleas filed a three count indictment against appellant (case No. 2002-CR-531). Count 1 charged appellant with possession of crack cocaine on or about November 4, 2001. Count 2 charged appellant with evidence tampering on or about November 4, 2001 and count 3 charged appellant with assault on or about November 4, 2001. Cases 2002-CR-429 and 2002-CR-531 were consolidated for trial which commenced on May 8, 2003. Following a five day jury trial appellant was found guilty on all counts except assault. Appellant now appeals setting forth the following assignments of error:
 {¶ 3} "I. The trial court erred by having the jury spearately determine the element of weight as to counts one, two, three, four and seven in case 2002-cr-429 after the jury had been discharged.
 {¶ 4} "II. The court, based on the jury's original verdict on counts one, two, three, four and seven of case 2002-cr-429, could only sentence defendant to the lowest degree of the offense on each count.
 {¶ 5} "III. The court erred in its judgment entries in cases 2002-CR-429 and 2002-CR-531 when it provided said sentences were to run consecutive to each to other.
 {¶ 6} "IV. The court erred in imposing consecutive sentences in Case 2002-CR-429 when it failed to state its findings and reasons for the imposition of consecutive sentences.
 {¶ 7} "V. The court erred in imposing consecutive sentences in case 2002-CR-531 when it failied to state its reasons for the imposition of consecutive sentences.
 {¶ 8} "VI. The court erred in denying defendant's 6th and 14th amendment rights to due process and to cross-examine the witnesses against him.
 {¶ 9} "VII. The court erred in denying defendant's rule 29 motion in Case 2002-CR-429 as to counts 7, 8 and 9.
 {¶ 10} "VIII. The verdict is against the manifest weight of the evidence as to case 2002-CR-429 in counts 7, 8, and 9.
 {¶ 11} "IX. Defendant had inadequate assistance of counsel."
 {¶ 12} Appellant's first and second assignments of error concern case No. 2002-CR-429. In his first assignment of error, appellant contends that the court erred in having the jury separately determine the element of weight as to counts 1, 2, 3, 4 and 7 after the jury had already been discharged.
 {¶ 13} At approximately 11:37 a.m. on May 15, 2003, the jury returned verdicts of guilty on two counts of trafficking in cocaine, two counts of preparing cocaine for sale and one count of complicity to permit possession of cocaine. The jury made no findings as the weight of the cocaine involved. The court then thanked the jury for their service and dismissed them. Less than an hour later, the prosecutor, on the record, asked the court to bring the jury back to the courtroom and instruct them to make specific findings regarding weight. The prosecutor stated:
 {¶ 14} "[T]he state's concern is that we had not had an opportunity to see the jury verdict forms. Procedurally in this court when there are drug cases with an amount that is in the indictment there is a separate finding of the amount of that drug that was sold or possessed. In that regard, we would ask the court if the jury could be instructed to make that an additional finding as to the weight in the counts in the indictment."
 {¶ 15} Over the objection of defense counsel, the court had the jury return to the courtroom. They were then instructed to make additional findings as to the weight involved in counts 1, 2, 3, 4 and 7. At approximately 1:14 p.m., the jury returned to the courtroom with five additional verdict forms in which they found that that the weight of cocaine in counts 1 and 2 was 11.26 grams respectively, the weight of cocaine in counts three and four was 7.66 grams respectively and the weight of cocaine in count seven was 71.91 grams. The jury was again excused and the verdict forms were filed with the court.
 {¶ 16} Appellant correctly asserts that a trial court cannot recall a jury to alter or amend its verdict once the jury has been discharged. Sargent v. State, (1842), 11 Ohio 472, 473;State v. Davis, 2nd Dist. No. 2002-CA-43, 2003-Ohio-4839. In this case, however, the court's error in amending the verdict after discharging the jury is harmless. If guilty verdicts are returned in cases involving bulk amounts or a multiple amounts of drugs, it is unnecessary to find and return the exact amount of the controlled substance. R.C. 2925.03(E) states:
 {¶ 17} "When a person is charged with the sale of or offer to sell a bulk amount or a multiple of a bulk amount of a controlled substance, the jury, or the court trying the accused, shall determine the amount of the controlled substance involved at the time of the offense and, if a guilty verdict is returned, shall return the findings as part of the verdict. In any such case, it is unnecessary to find and return the exact amount of the controlled substance involved, and it is sufficient if the finding and return is to the effect that the amount of the controlled substance involved is the requisite amount, or that the amount of the controlled substance involved is less than the requisite amount."
 {¶ 18} Although the initial verdict forms did not expressly include the jury's finding as to the exact amount of the controlled substance involved, all five of the jury's forms cited the appropriate code sections and stated that they found appellant guilty as charged in the indictment. The indictment, in all five individual counts, expressly set out the amount of the controlled substance involved as well as the specific code section which determined the degree of the offense charged. Thus, the five additional verdict forms at the very least were superfluous and did nothing to change the substance of appellant's conviction. As appellant suffered no prejudice from the fact that the jury submitted additional verdict forms after they had been discharged, the trial court's error was harmless. Appellant's first assignment of error is found not well-taken.
 {¶ 19} In his second assignment of error, appellant contends that pursuant to R.C. 2945.75(A)(2), the court could only sentence appellant to the least degree of each of the offenses. R.C. 2945.75(A)(2) states:
 {¶ 20} "A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 21} Appellant contends that because the initial verdict forms did not expressly set out the amount of the controlled substance involved, the court could only sentence appellant for felonies of the fifth degree. Having already determined above that the initial verdict forms appropriately indicated the degree of the offenses charged, appellant's second assignment of error is found not well-taken.
 {¶ 22} We will now consider appellant's fourth assignment of error. Appellant contends the court erred in imposing consecutive sentences in case No. 2002-CR-429. Specifically, appellant contends that the court failed to state its findings and reasons for imposing consecutive sentences on the record.
 {¶ 23} When imposing consecutive sentences, a trial court is required to make findings and give reasons supporting the findings at the sentencing hearing. State v. Comer (2003),99 Ohio St.3d 463, 468, paragraph one of the syllabus. The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings. Id. at 467. Pursuant to R.C. 2929.14(E)(4), a court may impose consecutive imprisonment terms if it makes three findings.
 {¶ 24} "First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Id. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Third, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c)." State v. Comer, supra.
 {¶ 25} The circumstances in R.C. 2929.14(E)(4)(a) through (c) are whether the offender committed the offenses while awaiting trial or sentencing, was under community control sanctions or was under post-release control; whether the harm caused by the offenses so committed was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct; and whether the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. As for the court's reasons, a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Comer, supra. Failure to do so constitutes reversible error. Id.; State v. Gary (2001),141 Ohio App.3d 194, 196-198, citing State v. Albert (1997),124 Ohio App.3d 225.
 {¶ 26} Before sentencing, appellant addressed the court and steadfastly maintained his innocence. In case No. 2002-CR-429, appellant was sentenced to 13 years in prison. On the record, the court found that consecutive sentences were necessary to protect the public. The court found that consecutive sentences were necessary "due to the seriousness of the conduct and the likelihood you have of committing future offenses." Finally, the court found that appellant had committed the offenses while awaiting trial on another matter.
 {¶ 27} As for her reasons in imposing consecutive sentences, the judge noted that appellant had been granted opportunities in the past to live a law abiding life but had not taken advantage of them. She explained that she was frustrated with appellant's inability to recognize reality and that "somewhere along the line, someone needs to get your attention". This "reasoning", however was set forth before she made the requisite findings and was never referred to again when she stated her statutory findings for imposing consecutive sentences. In sum, the judge failed to "clearly align" her rationale "with the specific finding to support [her] decision to impose consecutive sentences" as is required under Comer, supra. Accordingly, appellant's fourth assignment is found welltaken.
 {¶ 28} In his fifth assignment of error, appellant asserts the same argument with regards to case No. 2002-CR-531 wherein he received a three year prison sentence.
 {¶ 29} The record shows that the trial judge found that it was necessary to impose consecutive sentences in case No. 2002-CR-531 because of the court's duty to protect the public and that any other sentence would be disproportionate to the seriousness of the conduct he exhibited. The judge did not, however, find the existence of any of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). Accordingly, appellant's fifth assignment of error is found well-taken.
 {¶ 30} Appellant again argues that the court erred in sentencing him consecutively in his third assignment of error. Specifically, appellant contends that the court erred in ordering his sentence in case No. 2002-CR-429 to be served consecutively with case No. 2002-CR-531.
 {¶ 31} The court filed separate judgment entries for case No. 2002-CR-429 and case No. 2002-CR-531. Each of the two judgment entries contained a sentence ordering the prison terms in the two cases to be served consecutively. The sentencing transcript, however, contains no such order. A review of the transcript shows that the judge never addressed the issue of the sentences in case No 2002-CR-429 and case No. 2002-CR-531 running consecutively. As stated above, a court's findings and reasons for imposing consecutive sentences in a case must be stated at the sentencing hearing. Comer, supra. Pursuant to the syllabus in Comer,
id., appellant's third assignment of error is found welltaken.
 {¶ 32} In his sixth assignment of error, appellant contends that the court erred in denying him his Sixth and Fourteenth Amendment rights to due process and to cross-examine a witness against him.
 {¶ 33} This assignment of error concerns the testimony of two witnesses. State's witness Zachary Eversole testified that on March 18, 2002 and April 3, 2002, he purchased cocaine from appellant. Erie County Drug Task Force Detective Carl Johnson, also a state's witness, testified that beginning in March 2002, he was involved in an investigation of appellant regarding drug activity. With help from a confidential informant, Detective Johnson testified he set up a controlled drug purchase between appellant and Eversole on March 18, 2002 and April 3, 2002.
 {¶ 34} On cross-examination, appellant's counsel attempted to question Johnson about a supplemental report he had filed describing his March 18, 2002 interview with Eversole. The interview was conducted for purposes of determining whether or not Eversole remembered enough to be a viable witness against appellant. Eversole provided Johnson with a detailed description of his two drug purchases from appellant in 2002. Johnson then asked Eversole why he was "just coming out with this now." Eversole replied that he had given the information to two other detectives when they interviewed him a few weeks ago. Johnson filed a report detailing his interview with Eversole. The contents of the report were admitted into evidence.
 {¶ 35} It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 180. A reviewing court "will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice." State v. Long (1978),53 Ohio St.2d 91, 98.
 {¶ 36} During his cross-examination, appellant's counsel asked Detective Johnson to read the contents of his report detailing his interview with Eversole. The trial judge interrupted appellant's counsel stating: "It isn't necessary to go line by line and ask him what he wrote because he already admitted he wrote it and he signed it and it's his report." Appellant contends that the court erred in preventing his counsel from thoroughly cross-examining Johnson on the subject of the report. We disagree. The substance of the report mirrored Eversole's and Johnson's direct testimony. Moreover, the report was admitted into evidence. R.C. 2945.03 provides that "the judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue." Given the fact that the information in the report was before the jury regardless of counsel's cross-examination, we conclude that appellant suffered no prejudice when the trial court limited appellant's counsel's ability to cross-examine Johnson on the contents of his report. Appellant's sixth assignment of error is found not well-taken.
 {¶ 37} In his seventh assignment of error, appellant contends that the court erred in denying his motion for acquittal on counts 7, 8 and 9 in case No. 2002-CR-429. The record reflects, however, that appellant did not renew his Crim.R. 29 motion for acquittal at the end of his case, thus: "any error which might have occurred in overruling the motion is waived." State v.Wohlgamuth, Wood App. No. WD-01-012, 2001 Ohio 3103, followingState v. Whitmeyer (1984), 20 Ohio App.3d 279. Appellant's seventh assignment of error is found not well-taken.
 {¶ 38} In his eighth assignment of error, appellant contends his convictions on counts 7, 8, and 9 were against the manifest weight of the evidence.
 {¶ 39} In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "`* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The rule of law in Thompkins applies equally to a matter tried before the bench or a jury. State v. Fisher, 6th Dist. No. L-02-1041, 2002-Ohio-7305, at ¶ 7.
 {¶ 40} In count 7, appellant was convicted of complicity to commit possession of crack cocaine, a violation of R.C.2925.11(A) and a felony of the first degree. R.C. 2929.11(A) states: "[N]o person shall knowingly obtain, possess, or use a controlled substance." In count 8, appellant was convicted of corrupting another with drugs, a violation R.C. 2925.02(A)(4)(c) and a felony of the second degree. R.C. 2925.02(A)(4)(c) states: [N]o person shall knowingly do any of the following: * * * [I]nduce or cause a juvenile who is at least two years the offender's junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard; * * *." In count 9, appellant was convicted of tampering with evidence, a violation of R.C. 2921.12(A)(1) and a felony of the third degree. R.C. 2921.12(A)(1) states: [N]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: * * * [A]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."
 {¶ 41} All three charges resulted from the execution of a search warrant on July 30, 2002. Commander Curt Muehling of the Erie County Drug Task Force testified that in March and April of 2002, he was participated in a drug investigation that focused on appellant. On July 30, the task force executed a search warrant at the home of James Michael Young, brother of appellant. Muehling testified that earlier in the day he had seen appellant go into the house. Muehling testified that he walked up to the front door which was open. He knocked on the door and appellant came to answer it. Muehling testified that when appellant saw him at the door, he ran back into the interior of the house. Muehling and a fellow officer ran into the house after appellant. They found appellant in a bedroom with his 16-year-old cousin, Kiara Irby. It was there that appellant was arrested for selling cocaine on April 3, 2002. Muehling then asked Irby if there was anyone else in the home. Irby took Muehling to another bedroom which was occupied by Antoine Thompson. After the officers learned that there was a warrant out for Irby's arrest from juvenile court, she too was taken into custody.
 {¶ 42} Captain Paul Sigsworth of the Erie County Sheriff's Department arrived at the scene to transport Irby to the County Detention Home. Sigsworth testified he did not search Irby before he placed her in his cruiser. He remembered that during the ride to the detention home she was moving around a lot in the back seat. As she was crying, Sigsworth assumed she was moving around a lot because she was upset. After he had dropped her off, Sigsworth found an electronic scale, commonly used to weigh drugs, underneath the driver's seat of his cruiser. He also found two baggies containing large amounts of cocaine and another baggie of crack cocaine hidden between the cushions of the back seat. On August 7, 2002, Sigsworth interviewed Irby concerning the drugs and the scale that was found in his cruiser. Irby admitted that she had placed the drugs and the scale in his cruiser. She told Sigsworth that she received the contraband from a male who was present in appellant's house at the time the search warrant was executed.
 {¶ 43} Commander Muehling testified that he interviewed Irby twice concerning the contraband found in Sigsworth's cruiser. In an interview conducted on August 9, 2002, Irby stated that she had received the contraband from Antoine Thompson. On August 12, 2002, Muehling testified that he was contacted by Irby's attorney who told him that Irby wanted to tell the truth about the cocaine. In a second interview conducted on August 12, 2002, Irby stated that she received the contraband from appellant.
 {¶ 44} On direct examination, Kiara Irby testified that on July 30, 2002, before he was arrested, appellant handed her the contraband she later attempted to hide in Sigsworth's cruiser. On cross-examination, Irby testified that Antoine Thompson gave her the contraband. This testimony prompted the trial judge to directly ask Irby who gave her the contraband on July 30, 2002. Irby replied that it was "Mr. Thompson." On redirect examination, Irby again testified that when appellant was arrested, she was in the bedroom with him and Thompson was in a completely different room. She acknowledged that she was changing her story and stated she understood she was under oath.
 {¶ 45} The jury was in the best position to judge credibility of witnesses and weigh the above testimony. The jury verdict indicates that the jury found Irby not to be a credible witness. Thus, given our standard of review, we must give deference to the jury's finding. Appellant's eighth assignment of error is found not well-taken.
 {¶ 46} In his ninth and final assignment of error, appellant contends that he was denied effective assistance of counsel.
 {¶ 47} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v.Washington (1984), 466 U.S. 668, 687, Accord State v. Smith
(1985), 17 Ohio St.3d 98, 100. Scrutiny of counsel's performance must be deferential. Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith,
supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v. Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, State v.Lott (1990), 51 Ohio St.3d 160, for Ohio's adoption of theStrickland test. Trial tactics and strategies, even if debatable, do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49.
 {¶ 48} Appellant first contends that his counsel was ineffective in that he failed to request separate trials for case No. 2002-CR-429 and case No. 2002-CR-531. Appellant has not explained how counsel's failure to request separate trials prejudiced appellant. We must therefore assume that the decision not to request separate trials was a matter of trial strategy which we will not second guess.
 {¶ 49} Appellant next contends that his trial counsel was ineffective in failing to file a motion to suppress all evidence obtained as a result of appellant's November 4, 2001 arrest.
 {¶ 50} Officer Robert Gardin of the Sandusky Police Department testified that on November 4, 2001, he was called to respond to an auto accident at a local bar. When he arrived on the scene he noticed that the building had been damaged. He did not, however, see any damaged vehicles. Next to the damaged building he noticed a trail of fluid leading out of the parking lot. Gardin followed the trail to a parked car down the street. The car exhibited damage to its left front end. Gardin testified that this damage was consistent with the damage he observed on the building. Appellant got out of the car and was approached by Gardin. Appellant denied any knowledge of the accident. While Gardin was questioning appellant, Gardin noticed that appellant was swaying from side to side and that he smelled strongly of intoxicants. Gardin then arrested appellant for driving under the influence of alcohol. At the police station, appellant attempted to ingest a large amount of cocaine he apparently was in possession of when he was arrested. Appellant refused to spit out the cocaine. The fire department was called and appellant was transported to a hospital emergency room. Gardin testified that they took appellant to the hospital in case he were to suffer an overdose. At the hospital, appellant struggled and refused to open his mouth. Appellant was secured and sedated. The emergency room doctor was then able to suction the cocaine out of appellant's mouth. Appellant's November 4, 2001 arrest for driving under the influence ultimately led to appellant's indictment in case No. 2002-CR-531 for possession of cocaine and tampering with evidence.
 {¶ 51} In Beck v. Ohio (1964), 379 U.S. 89, 91, the United States Supreme Court held that probable cause for a warrantless arrest is based on "* * * whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed the offense." Based on Gardin's testimony about the accident, the fluid trail, appellant's behavior when confronted and the fact that appellant smelled of intoxicants, it seems highly unlikely that appellant's counsel would have been successful in getting all evidence resulting from appellant's November 4 arrest suppressed. Counsel was therefore not ineffective in failing to file a motion to suppress.
 {¶ 52} Finally, appellant contends his counsel was ineffective in his cross-examination of Commander Muehling. Specifically, appellant contends that his counsel failed to question Muehling regarding the arrest of Antoine Thompson and the fact that he may have been in Sigsworth's cruiser at the same time that Kiara Irby was. Appellant contends that this information may have supported Irby's testimony that Thompson gave her the drugs. Given Irby's erratic, inconsistent testimony in this trial, we fail to see how the outcome of this trial would have been different had counsel pursued a different line of questioning when cross-examining Muehling. Accordingly, appellant was not denied effective assistance of counsel and appellant's ninth assignment of error is found not well-taken.
 {¶ 53} On consideration whereof, this court reverses the judgment of the Erie County Court of Common Pleas as to the imposition of consecutive sentences and affirms the judgment in all other respects. This case is remanded to the trial court for further proceedings consistent with this decision and judgment entry. Costs of this appeal are assessed to appellant pursuant to App.R. 24.
Judgment Reversed, in part, and Affirmed, In Part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Singer, J., Pietrykowski, J., Concur.